Good morning, gentlemen. We're back from our recess. The case of Mayer and Harrington v. Mayer is our next case. I believe Mr. Fryer, you're representing the appellate, so please  Thank you, your honor. Yes, my name is Alan Fryer. I represent the appellant, the creditor Robert J. Harrington. I would like to reserve two minutes of my time for rebuttal. Okay, keep an eye on the clock. We'll try to help you. Thank you. May it please the court. There's two main issues involved in this appeal. The first is whether the order denying relief from stay is a final appealable order. The second issue is whether in entering that order, the judge abused the court, bankruptcy court abused discretion by failing to apply the proper legal standard. With respect to the first issue, under the Supreme Court holding in Ritsen, an appeal, a order denying relief from stay is a final appealable order, even if it's entered without prejudice, unless the reason for entering it without prejudice was because further developments might change the state. Now, the bankruptcy court made it clear in hearings that she had no intention of granting relief from stay in any future circumstance. She said at a hearing on August 27th, 2020, she said, quote, as far as the court discussing the Curtis factors again, that's not going to happen because the courts already ruled on the motion for relief from stay. But she did say, but the bank bankruptcy judge didn't say it's without prejudice, right? Well, what is the meaning of that? circumstances without prejudice? We have no idea, Your Honor, because the issue was never raised by any party. It was not discussed by any party. It was not discussed by the court. It was simply a matter of when the judge entered the order. She put the label on it without prejudice. We have no idea why she did that. But it's quite clear from her comments relating to the motion and her order that she did not intend to revisit the issue. Yeah, but what bothers me is the usual meaning of without prejudice in any kind of order means it's not final. Isn't that the usual meaning? No, Your Honor, it's not the usual meaning under Supreme Court and Ninth Circuit precedent, which we cite in our brief, the courts have held that in any proceeding, where it is dismissed with even without prejudice, that is a final appealable order. And Ritson creates a possible exception to that. And it's footnote for the Supreme Court says that such a an order without prejudice might not be final if it was entered that way because further developments might change the state calculus. But there's every indication here that that was not the reason for the court doing that. So we don't think that the exception in Ritson applies to this case. The judge has made it quite clear, not only from her comments, but also the fact that she scheduled the remaining portion of the adversary proceeding for trial. No trial date had been set, but the parties have been ordered to submit pre-trial memos for pre-trial conference and the court had made it clear that her intention was to continue the case to trial as promptly as possible. So there was no such no circumstance here suggesting that the court would consider any possibility of further developments changing the state calculus. Not only that, but she also indicated that, sorry I lost my train of thought. Let me jump in and ask this question then. If we agree with you on the question number one, in other words that it's an appealable issue, should we reach a second issue or should we send it back to the bankruptcy court? I think it's clear from the cases we cite in our brief that it's entirely. So the problem you have here, first of all, is that the court was aware of the proper standard, which is to apply the Curtis factors because the bankruptcy court did that in its tentative ruling on the motion for relief from stay before vacating that ruling. The problem is that the court never went back and considered those factors again in making its final dispositive ruling. And what's clear is that all of those factors, all the relevant, of the twelve or so Curtis factors, not all of them will apply to any given case. But the five or six that apply here, as the judge noted in her tentative ruling, and as we have argued in our briefs, all of those factors overwhelmingly support relief from stay. And there are none of those factors that support denying relief from stay. So let me be sure I understand. My colleague has asked whether we should, if we agree with you about the jurisdictional issue and the finality of the appealability of the order, whether we should send it back to the district court in the first instance. I thought you were going to say that, yes, we should because of the twelve factor test. But you now seem to be arguing that this court should decide the issue. Is that correct? Yes, your honor. As we've argued in our brief, you will see when we cite Ninth Circuit cases that in which the court has done exactly that. The Ninth Circuit has examined the factors and made a dispositive ruling without sending it back. Now the reason for that is that the court here, the lower court, the bankruptcy court, did not make any findings of fact. There are no findings made that this court would have to give way to or consider controlling. But doesn't our case law suggest that in that instance that the trial court should be given a first crack at deciding the twelve factor test? That may be true in some cases, but in cases involving these Curtis factors in a bankruptcy context, that is not what the Ninth Circuit has done previously. It has gone ahead and made the decision that those factors favor relief from stay. Another reason why it would be appropriate for this court to go ahead and make a dispositive ruling is because of the enormous delay that has already occurred. It's been three going on four years since the motion for relief from stay was filed. There's been all kinds of prejudice to Mr. Harrington. It is not against the interests of the bankruptcy estate to grant stay relief. The chapter seven trustee has already said that the relief granted gives an opportunity to benefit the bankruptcy estate by recovering assets for the benefit of creditors. By the way, Mr. Fryer, your comment reminded me of another question I had. Anything new with respect to the status of the proceeding in the Massachusetts State Court? I'm sorry, what was your question? I say is there any new developments with respect to the status of the proceeding in the state court? No, your honor. As indicated in our brief, and I think in our reply brief, when the debtor filed his bankruptcy petition and filed a suggestion of bankruptcy in the state court proceedings, the entire proceedings were put on hold. And when I contacted the court to see if it was possible to have the case proceed with respect to the non-debtor parties, the answer was no. The entire case will be stayed unless and until relief from stay is granted. So there has been no possibility of moving forward with the Massachusetts litigation until we get an answer on this question of relief from stay. Based upon your, you're from Massachusetts. Yes. What goes on out there, I mean, is the court, you think, you think would be able to give you a prompt trial? Absolutely. This case is that even before the debtor filed his bankruptcy petition, the court was pushing to schedule a case for trial because at that point it was already seven years old. It's now 11 years old and the court will give it the highest priority. We also have parties who under Massachusetts law, because they're over the age of 65, have a right to a speedy trial. So there's every reason to believe that this case will be fast-tracked and gotten to trial as quickly as possible. So all of those factors, the Curtis factors, as I've indicated, overwhelmingly favor relief from stay. Some of the important issues are that, first of all, it allows a jury in Massachusetts, with my client having claimed a right to a jury trial, it will allow a jury in Massachusetts to initially resolve any factual disputes between the parties. And that's important, as we explained in our brief, because of his right to a custodial right to a jury trial. And understanding that all of the factual issues in the Massachusetts litigation are exactly the same factual issues on which the proof of claim is based and the adversary proceeding allegations are based. So a resolution of the facts that are common, which are overwhelmingly all or virtually all the facts in all three legal proceedings, will be resolved by the jury in Massachusetts in the first instance. That has a huge benefit to the California court because it means that it will not have to spend three weeks trying all of those factual issues. It means that all of those facts that are found can be incorporated into the California proceedings that will avoid having to resolve the proof of claim because the proof of claim is the claim asserted in the Massachusetts proceedings. And it will either provide a basis for summary judgment on some or all of the adversary proceeding issues. But it will also mean that any facts other than perhaps issues of credibility where the debtor and my client disagree on facts, testify contrary to each other on facts, only those facts will be resolved by the bankruptcy court. Can I ask you, counsel, can I ask you this? Why didn't you move for relief from the stay immediately upon the filing of the bankruptcy petition? Well, your honor, I can tell you the answer. It's not in the record. The answer is that Sullivan Hill, co-counsel for Mr. Harrington in California, also represent one of the other creditors in the bankruptcy. And that creditor was considering for a long time whether it would join in a motion for relief from stay. And we didn't want to file the motion until we got their answer. And unfortunately, it took them eight months to do it, to because there was no, there was still no prompt resolution of the motion for relief from stay. Because as the debtor has acknowledged, the bankruptcy court gave the chapter seven trustee eight or nine months to investigate and determine whether there was any adverse impact to the bankruptcy estate by allowing the motion for relief from stay. And bizarrely, when the chapter seven trustee said, no, there is no, we see no harm. We see a benefit and therefore we support relief from stay. At that point, the court vacated its tentative ruling, but still didn't enter a ruling for almost another year. And then it was in the negative. So you said you wanted to save a couple of minutes. You're getting close to that. Yes, I'm ready to rest. Whatever Mr. Keene has to say. Very well. Okay, Mr. Keene, we'll hear from you. I think you've got your microphone muted, Mr. Keene. It should be on the left of your screen, maybe a little button over there. There you go. Okay, can you see me? Now we can see you and hear you. Excellent. Thank you, Your Honor. Scott Keene appearing on behalf of Stuart Meyer, the debtor and appellee in this case. I know you've reviewed the record. So every one of you understand that this is not a garden variety relief from stay issue. The first thing that makes it unusual is that you have a plaintiff who contends they were ready to go to trial within days of the time that we filed the bankruptcy petition. I've been practicing 40 some years now, and I've encountered that experience many times because I wrote specialized in bankruptcy. And I can tell you that the customary rule, I can tell you from experience that when this happens, and the party is really ready to go to trial, they make no, they immediately file a motion for relief from stay. Now, counsel says, well, they waited these months to file the motion because their local counsels, a very good firm, couldn't resolve a conflict with this client that would allow them to go forward. Well, as counsel says, it's not in the record, but I can tell you from experience, there are plenty of highly skilled bankruptcy attorneys in San Diego that could have served as local counsel. That's not an excuse. And what makes it worse, Your Honor, is that while they were just delayed for allowing contacts with the client, Mr. Mayer was prejudiced because this motion was not only filed 11 months after the petition, which is a remarkable thing when you're requesting to resume state court litigation, but it was eight months, almost nine months after the adversary proceeding was filed and the appellant participated in the usual pretrial procedures, discovery was taken, scheduled and taken, all of those things. And believe me, that costs money. And as we pointed out to the court at the July 2nd, 2019 hearing, our client had already expended over $50,000. Now, just to put a fine point on that, a Chapter 7 debtor surrenders all of his non-exempt assets to the trustee. And that was done. So what does that mean? That means that now after having surrendered all non-exempt assets, there are only three sources from which this debtor can defend the dischargeability litigation. One is post-petition earnings. Two is exempt property. And three would be post-petition borrowings. Now, all three of those are the foundation of what's supposed to be the fresh start. So clearly, our client had to expend the money to defend and no choice. You can't just lie idle. You have to prepare for trial. Can I ask you this, counsel? It sounds like you're willing to acknowledge that if the motion for relief from stay had been filed immediately without this long delay, that perhaps the equities would have weighed in favor of granting that relief. But that because of the delay that incurred or that took place and the attorney's plan incurred, that that somehow shifted the balance. Certainly, that's how the bankruptcy court perceived it. And I guess I wanted you to speak to why is it that? Because presumably, your client too was already ready to go to trial and had invested all the money necessary to get ready for that. And so why does the fact that $50,000 in fees were incurred in the bankruptcy proceeding kind of shift the balance? Well, there are a couple of reasons for that, thank you. That's a good question. First, theoretically, he was prepared for trial. Economically, he couldn't proceed. And we have, I think, his footnote 19 in our brief that refers you to the summary of assets and liabilities. And this guy, I think there was something like, he's woefully over a million dollars in debt, $800,000 in the low $100,000 worth of assets to meet those debts. He also indicated that he was already in debt to his local council over $70,000. So, I mean, as a practical matter, are you ready? Could you be ready theoretically? Yeah, theoretically, but we live in a real world, not a theoretical world. And he couldn't. And I want to be sure I understand it. You're saying that Mr. Harrington was the one that's woefully in debt or your client was woefully in debt? Oh, my client was woefully in debt. I'm sorry. I didn't understand. I thought you were suggesting that Mr. Harrington could not have proceeded a trial in Massachusetts because he was out of money. But you're saying your client was the one that had the problem? We were out of money. Got it. So, we couldn't show up. Now, I want to go, I'm not finished with your counsel's question. I want to return to that for a moment. One of the things that I think the appellant overlooks is that the Curtis factors are not static. A bankruptcy case is not static. The changes of circumstances that occur after the motion is filed can change the weight of every item. And I want to focus on, because this is what the court focused on mostly, as you can tell from our brief, the balance of hurt factor. I think that on the day, and I think we say this in our brief, on the day that the bankruptcy petition was filed, the balance of hurt weighed most heavily in favor of the appellant. But with the passage of time and the circumstances that occurred, that changed. And the court was cognizant of that change. If you look in the excerpts of the record where we quote the court, everything that the court did was really, and after the July 2nd, 2019 hearing was focused on the balance of hurt factors. Now, counsel complains that we don't have actual findings of fact and conclusions of law. Well, if you look at rule 52 of the Federal Rules of Civil Procedure, which are incorporated in the bankruptcy rules, you don't have formal findings of fact and conclusions of law on a motion. In fact, the only motions where you get those are rule 12 motions and summary judgment motions. You don't have that. So the findings are not required. But that doesn't mean that they don't exist. Because in virtually every order that the bankruptcy court issued, it says for the reasons stated on the record. And as we point out in footnote 135 of our brief, we point you to the very precise moment in time when the dynamics of this case changed. Yes, one day before that hearing, the court has its tentative ruling where it said without much discussion that the Curtis factors favored granted relief. But then there was a very day where there were two items on calendar and our item to relieve from stay. I made substantial arguments and I referred to them in footnotes specifically in footnote 135. This is a travesty that what has happened is in effect, and I'm not saying that this was intentional, but in effect, what the appellant accomplished by delaying in filing the motion and allowing the adversary proceeding to move forward, it was a functional bait and switch. Come on in, we filed a petition, get ready for trial. Then eight months later, oh no, we want to go back to the Massachusetts court after you've spent $50,000. That has an impact on the balance of hurt. And if you look at the transcripts that we've included in the record, all of them that occurred after July 2nd, court is focused on balance of hurt. And with the passage of time, it favors the defendant appellee because that hearing on July 2nd, 2019 was like a watershed moment. It was clear from every order that the court entered after that of starting on August 1st, 2019, December 10th, 2019, February 21st, 2020, February 27th, 2020. It is very, very clear that the court's purpose in not immediately granting relief on stay was she was persuaded by my argument that here we are on the brink of trial in the bankruptcy court on only those issues that affect Harrington and Mayer and not this morass of other issues that apply to other parties. And so the court permitted final depositions to be taken. The appellant never objected to that process. The final depositions were taken. Summary judgment motion was filed. And as the court noted, she had substantially narrowed the issues by granting in part and denying in part the motion for summary judgment. That's why we were set to go with pre-trial orders when appeals were filed. And I might point out the appeals were filed against both the ruling on the summary judgment motion and the relief from stay. The summary judgment motions appeals have been dropped. Counsel, before you run out of time, can I just ask you a question about the jurisdictional issue and what we should do if we disagree with your position on that front? Well, first off, let's just say that we concluded that the without prejudice label didn't affect things and that this was properly before us. Do you agree that we should then, rather than send this back to the district court for the district court to go through this whole analysis, that we should just resolve the issue once and all ourselves? Well, my gut tells me that it's probably not a good idea to decide issues where you admit that you don't have jurisdiction. So, I would say that. I think what I was asking, counsel, is let's say that we concluded, contrary to your argument, that we do have jurisdiction. At that point, what should we do? Should we just basically review the bankruptcy court's decision ourselves and either affirm or reverse, or should we send it back to the district court for the district court to do that in the future? I think there are both sides of that, but I think if you don't have jurisdiction, you ought to send it back. Whether it goes back to the district court or the bankruptcy court, I don't know, but it ought to be. But here's a more important point, and I don't want to miss this. We spent a substantial portion of our brief explaining why, if you do have jurisdiction, the bankruptcy court never abused its discretion. Never does it say the Curtis factors don't apply, and you can tell by reading the transcripts what she was basing her decision on. I have one more point I want to make because I was really surprised to see it in the reply brief at page 20, where the appellant says, basically, you shouldn't consider events after the relief from state motion was filed, and particularly not where those delays were engineered by the court, and that's the word they used, engineered. Well, if you look at the exact ruling, she's saying they were being continued because of discovery issues, illness of Harrington, illness of his counsel, stipulations, and negotiations. That's hardly the court engineering delay, and I think this case lasted as long as it was because it was complicated. It was intertwined with the adversary proceeding, and the best use of judicial economy, which was achieved, was by narrowing the issues that applied to Harrington and Mayer to be resolved in the trial that's only a couple of days rather than a three-week trial that involves multiple parties. Counsel, let me ask you this. As you know, your opposing counsel has suggested that there are a number of witnesses in Massachusetts that deal with issues other than the ones that are directly before the bankruptcy court. Should the bankruptcy court, at the very least, grant relief from state as to that portion of the litigation, even if it retains the, if you will, the primary issues between Mr. Mayer and Mr. Harrington? Not only is the answer to that question, yes, but it comes out of testimony in a declaration by Mr. Fryer, which we refer to in the record. He actually prepared such a motion, what the record reflects. He prepared such a motion, and he served it on counsel. Then he goes to the clerk of the court itself. The clerk of the court says, oh, no, no, we can't hear such motions unless you get relief from the bankruptcy court. Knowing that, and I mean, this is one of the things that could occur to change the Curtis calculus, he could have gone back. Okay, you won't do this unless I get an order from the court. I'll go get an order from the court. So to response precisely to your question, yes, if he renewed his motion and limited it to only those issues that applied to Harrington and other parties and not to any issues that have now been narrowed that do apply to Harrington and Mayer, that would be a good thing. Yeah, you don't oppose that then. Okay, now your time is up. Let me ask my colleagues whether either has additional questions for Mr. Keene. No. Very well. Okay, thank you, Mr. Keene. So Mr. Fryer, you have a little bit of time left. Why don't you proceed with the rebuttal? Your move button is on. I'm sorry. Thank you. What you were just suggesting, Judge Smith, is exactly what the Massachusetts court clerk said they would not do, which is to proceed with the claims other than those involving the debtor. The relief had to be with respect to the entire case so the entire case could move forward. So the problem is not with the bankruptcy court or the district court. It's with the trial court in Massachusetts. Is that correct? The trial court in Massachusetts says we have to get relief from stay in order for any part the Massachusetts litigation to move forward. All right, well, I guess as you heard, my question to Mr. Keene was, did they oppose the bankruptcy court or the district court changing the stay so as to provide relief on that portion of the case that did not directly involve Harrington and Mayer so that could proceed in bankruptcy? And he said, if I understood him correctly, he has no opposition to that at all. What's your position on that? Well, I don't know for sure what the Massachusetts court would say, but based on what they told me before, I think that would still not be satisfactory to them. Even though the bankruptcy court... Mr. Farrar, isn't it true that in spite of the stay, the Massachusetts court could have gone ahead and tried the other claims right? I know that the stay doesn't involve the claims against, you know, that are not against the bankrupt. Does it? Your Honor, the law is that cases may proceed as to any claims not involved, not against the debtor, but it's the policy of the Massachusetts court not to do that. Well, that's what I'm getting at. So there's been no stay with respect to the other claim, but it's the decision of the Massachusetts court already made not to proceed with those claims, right? The bankruptcy stay does not prevent the state court from proceeding on the other claims, that's correct. But the policy of the Massachusetts court is to stay the entire matter. And if I could just make one other point. Your overtime, so do it very quickly, please. Yes, the adversary proceeding had a filing deadline, and that's why it had to be filed promptly. There is no deadline for filing a motion for relief from stay. And the other thing that Attorney Keene did not mention is that the adversary proceeding after initial exchange of document discovery was stayed itself and only lifted sui sponte by the court in order to allow the depositions and summary judgment to go forward. So there was no additional expense. The expense that Attorney Keene refers to the debtor having incurred was already incurred at the time that the tentative ruling that would have granted relief from stay was issued. And so the cost was already there. And then the other point is, as we mentioned in our brief, the cases have said that the fact that it would cost money for the debtor to defend himself in the state court proceedings is not relevant to the stay calculus. Because they would have to defend themselves either way, either in bankruptcy court or in the Massachusetts courts. Very well. Other questions for Mr. Fryer by either of my colleagues? Thanks to both lawyers for your argument. Very helpful. We appreciate it. The case just argued is submitted. Thank you.
judges: TASHIMA, SMITH, WATFORD